1
2
3
4
5
6
7
8
9
10

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON**

11
12
13
14
15
16

J.A., THROUGH HIS GUARDIAN, TARA ALLEN; C.C., THROUGH HIS GUARDIAN, CINDY CRUMMIT; A.D., THROUGH HIS GUARDIAN, LUCKIESIA BELTON; A.H., THROUGH HIS GUARDIAN, TRACY HUNT; J.H., THROUGH HIS GUARDIAN, TRACY HUNT; DONALD MCFADDEN; BRANDON PETTI; SAMUEL WHISNANT; individually and on behalf of all others similarly situated,

17                    Plaintiff,

18        v.

19   MICROSOFT CORPORATION,

20                    Defendant.

Cause No.:  2:20-cv-00640-MAT

PLAINTIFFS' OPPOSITION TO MICROSOFT CORPORATION'S MOTION TO COMPEL ARBITRATION AND STAY CLAIMS

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**ORAL ARGUMENT REQUESTED**

21
22
23
24
25
26

Benjamin F. Johns (*pro hac vice*)
Andrew W. Ferich (*pro hac vice*)
Alex M. Kashurba (*pro hac vice*)
**CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP**
361 W. Lancaster Avenue
Haverford, PA  19041

Nicholas A. Migliaccio (*pro hac vice*)
Jason S. Rathod (*pro hac vice*)
**MIGLIACCIO & RATHOD LLP**
412 H Street NE
Washington, DC 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com

1  Tel: (610) 642-8500                    jrathod@classlawdc.com
   bfj@chimicles.com
2  awf@chimicles.com
   amk@chimicles.com
3
4  Cynthia Heidelberg
   WSBA No. 44121
5  **BRESKIN JOHNSON & TOWNSEND**
   **PLLC**
6  1000 Second Avenue, Suite 3670
   Seattle, WA 98104
7  Tel: (206) 652-8660
   cheidelberg@bjtlegal.com
8

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

## TABLE OF CONTENTS

I.    INTRODUCTION................................................................................................1

II.   FACTUAL BACKGROUND ..............................................................................1

    A.   The Defective Xbox Controllers ..............................................................1

    B.   Plaintiffs' Experiences with the Defective Xbox Controllers .................2

    C.   The Minor Plaintiffs Have Disaffirmed the Arbitration Provision ................................3

    D.   Plaintiffs Seek Public Injunctive Relief..................................................3

III.  ARGUMENT ......................................................................................................4

    A.   Microsoft Has Not Carried Its Burden of Establishing
        an Agreement to Arbitrate.........................................................................4

    B.   The Law of the Forum State Applies.........................................................4

    C.   No Agreement to Arbitrate Exists Between the Parties .............................5

        1.   The Click-Through Agreement Does Not Apply to Disputes
            for the Controllers.........................................................................5

        2.   The Shrink-Wrap Agreement in the Xbox Controller Packaging
            is Unenforceable ...........................................................................6

    D.   The Arbitration Agreement is Unconscionable.........................................8

        1.   The alleged arbitration agreements are procedurally unconscionable ..............9

        2.   The alleged arbitration agreements are substantively unconscionable ...........10

    E.   The Arbitration Provision is Invalid as to Plaintiffs' California Claims
        Because it Prohibits a Consumer from Seeking Public Injunctive Relief
        in Any Forum ...........................................................................................11

        1.   Plaintiffs A.D. and Petti seek public injunctive relief
            for the California Subclass ..........................................................15

        2.   The Arbitration Agreement and Class Action Waiver are Invalid as to
            California Consumers Because they Preclude California Consumers From
            Pursuing Public Injunctive Relief in any Forum...............................16

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS  - i

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

F.  Minors Who Disaffirm the Contract Cannot be Compelled to Arbitration ...............19

G.  Plaintiffs' Challenge to the Arbitration Provision is Properly Before this Court ........20

H.  Should the Court Compel Arbitration of Certain Claims,
the Remaining Claims Should Proceed in Federal Court ...................................................23

IV.  CONCLUSION ............................................................................................24

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS  - ii

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

## TABLE OF AUTHORITIES

<u>CASES</u>

*A.D. v. Credit One Bank, N.A.,*
  885 F.3d 1054 (7th Cir. 2018) ................................................................................................20

*Adler v. Fred Lind Manor,*
  103 P.3d 773 (Wash. 2004) ........................................................................................... 10, 11

*Blair v. Rent-A-Center, Inc.,*
  928 F.3d 819 (9th Cir. 2019) ........................................................................... 13, 14, 15, 17

*Brennan v. Opus Bank,*
  796 F.3d 1125 (9th Cir. 2015) ................................................................................................22

*Burnett v. Pagliacci Pizza, Inc.,*
  470 P.3d 486 (Wash. 2020) ................................................................................8, 9, 10, 23

*Carideo v. Dell, Inc.,*
  520 F. Supp. 2d 1241 (W.D. Wash. 2007) ........................................................................4

*Chen v. Bank of Am., N.A.,*
  No. CV 19-6941-MWF (SK), 2020 U.S. Dist. LEXIS 142913 (C.D. Cal. Mar. 31,
  2020)........................................................................................................................................24

*Congdon v. Uber Techs.,*
  226 F. Supp. 3d 983 (N.D. Cal. 2016) ..............................................................................24

*Cottrell v. AT&T Inc.,*
  No. 19-cv-7672, 2020 U.S. Dist. LEXIS 93423 (N.D. Cal. May 27, 2020) ....................16

*Delisle v. Speedy Cash,*
  818 F. App'x 608 (9th Cir. 2020).........................................................................................14

*Diaz v. Nintendo of America, Inc.,*
  No. 19-1116 (W.D. Wash. Mar. 2, 2020) ..................................................................... 18, 19

*Doe v. Epic Games, Inc.,*
  No. 19-cv-03629-YGR, 2020 U.S. Dist. LEXIS 11473 (N.D. Cal. Jan. 23, 2020) .........19

*Dornaus v. Best Buy Co., Inc.,*
  No. 18-cv-04085, 2019 U.S. Dist. LEXIS 24522 (N.D. Cal. Feb. 14, 2019) .....................15, 17, 18

*Eiess v. USAA Fed. Sav. Bank,*
  404 F. Supp. 3d 1240 (N.D. Cal. 2019) ........................................................................ 20, 22

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS  - iii

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*Eiess v. USAA Fed. Sav. Bank,*
    No. 19-cv-00108-EMC, 2019 U.S. Dist. LEXIS 144026 (N.D. Cal. Aug. 23,
    2019)............................................................................................................. 14, 16

*Erwin v. Cotter Health Ctrs.,*
    167 P.3d 1112 (Wash. 2007) ...................................................................................4

*I.B. ex rel. Fife v. Facebook, Inc.,*
    905 F.Supp.2d 989 (N.D. Cal. 2012) ....................................................................20

*Galilea, LLC v. AGCS Marine Ins. Co.,*
    879 F.3d 1052 (9th Cir. 2018).................................................................................22

*Gandee v. LDL Freedom Enters., Inc.,*
    293 P.3d 1197 (Wash. 2013) .................................................................................10

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
    139 S. Ct. 524 (2019)..............................................................................................20

*Hill v. Garda CL Nw., Inc.,*
    308 P.3d 635 (Wash. 2013) ...................................................................................10

*Kelley v. Microsoft Corp.,*
    251 F.R.D. 544 (W.D. Wash. 2008)........................................................................5

*Kelly v. United States,*
    809 F. Supp. 2d 429 (E.D.N.C. 2011) ...................................................................19

*Kwan v. Clearwire Corp.,*
    No. C09-1392JLR, 2011 U.S. Dist. LEXIS 150145 (W.D. Wash. Dec. 28, 2011) ..................... 6, 7

*Lohr v. Nissan N. Am., Inc.,*
    No. C16-1023RSM, 2017 U.S. Dist. LEXIS 38934 (W.D. Wash. Mar. 17, 2017) ..........................11

*Lopez v. Kmart Corp.,*
    No. 15-cv-01089-JSC, 2015 U.S. Dist. LEXIS 58328 (N.D. Cal. May 4, 2015) ...........................21

*Lotsoff v. Wells Fargo Bank, N.A.,*
    No. 18-cv-2033, 2019 U.S. Dist. LEXIS 169373 (S.D. Cal. Sept. 30, 2019) ..................14

*Mattingly v. Palmer Ridge Homes, LLC,*
    157 Wash. App. 376, 238 P.3d 505 (2010)............................................................10

*McArdle v. AT&T Mobility LLC,*
    772 F. App'x 575 (9th Cir. 2019) ..........................................................................14

*McGill v. Citibank, N.A.,*
    393 P.3d 85 (Cal. 2017)....................................................................................*passim*

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS  - iv

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*McGovern v. U.S. Bank, N.A.*,
    No. 18-CV-1794-CAB-LL, 2020 U.S. Dist. LEXIS 142618 (S.D. Cal. Aug. 10,
    2020) ................................................................................................................................14

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) ..........................................................................................23

*Mortenson Co. v. Timberline Software*,
    998 P.2d 305 (Wash. 2000) ................................................................................................6

*New Prime Inc. v. Oliveira*,
    139 S. Ct. 532 (2019) ........................................................................................................21

*Norcia v. Samsung Telecomm'ns America, LLC*,
    945 F.3d 1279 (9th Cir. 2017) ........................................................................................ 6, 7

*Norcia v. Samsung Telecomms. Am., LLC*,
    845 F.3d 1279 (9th Cir. 2017) ...........................................................................4, 6, 8, 10

*R.A. v. Epic Games, Inc.*,
    Case No. 2:19-cv-014488, 2019 U.S. Dist. LEXIS 217426 (C.D. Cal. July 30,
    2019) ................................................................................................................................19

*Revitch v. DIRECTV, LLC*,
    977 F.3d 713 (9th Cir. 2020) ......................................................................................*passim*

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
    298 F. Supp. 3d 1285 (N.D. Cal. 2018) ............................................................................24

*Schmidt v. Prince George's Hospital*,
    366 Md. 535, 784 A.2d 1112 (Ct. App. Md. 2001) ...........................................................19

*Sheller v. Frank's Nursery & Crafts*,
    957 F. Supp. 150 (N.D. Ill. 1997) .....................................................................................19

*Snarr v. HRB Tax Grp., Inc.*,
    No. 19-17441, 2020 U.S. App. LEXIS 38373 (9th Cir. Dec. 9, 2020) ......................*passim*

*Sparks v. Sparks*,
    101 Cal.App.2d 129, 225 P.2d 238 (1950) .......................................................................19

*T. K. v. Adobe Sys. Inc.*,
    No. 17-CV-04595-LHK, 2018 U.S. Dist. LEXIS 65557, 2018 WL 1812200 (N.D.
    Cal. Apr. 17, 2018) ............................................................................................................20

*Tilden-Coil Constructors, Inc. v. Landmark Am. Ins. Co.*,
    721 F. Supp. 2d 1007 (W.D. Wash. 2010) ..........................................................................4

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS  - v

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*Tillage v. Comcast Corp.,*
    772 F. App'x 569 (9th Cir. 2019) ............................................................. 13, 14

*Uniloc 2017 LLC v. HTC Am., Inc.,*
    No. C18-1732 RSM, 2020 U.S. Dist. LEXIS 238814 (W.D. Wash. Dec. 18, 2020)........................24

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.,*
    46 F. App'x 412 (9th Cir. 2002) ...............................................................24

*Vasquez v. Libre by Nexus, Inc.,*
    No. 17-cv-00755-CW, 2018 U.S. Dist. LEXIS 214143 (N.D. Cal. Aug. 20, 2018) ................. 15, 17

*Zuver v. Airtouch Commc'ns,*
    103 P.3d 753 (Wash. 2004) .........................................................................9

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS  - vi

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

I.      **INTRODUCTION**

Instead of publicly engaging on the merits of Plaintiffs' allegations that Microsoft knowingly sold defective Xbox controllers, Microsoft seeks to have consumers' claims compelled to confidential arbitration proceedings. But in seeking to leap to this conclusion under the Federal Arbitration Act, Microsoft skips over several relevant state law principles which prohibit this result. Most of the Plaintiffs in this case are minors who have voided purported arbitration agreements with Microsoft, as is their right before they reach the age of majority under blackletter contract law. And all of the Plaintiffs seek a public injunction as a remedy; this, too, prohibits the full enforcement of the arbitration clause in the manner sought by Microsoft. Finally, all of the Plaintiffs have explained why no enforceable agreement to arbitrate was ever formed here, and even if it had been why it's procedurally and substantively unconscionable. As set forth in more detail below, Microsoft's motion should be denied.

II.     **FACTUAL BACKGROUND**

This class action lawsuit alleges that Microsoft-branded wireless Xbox One controllers—including standard Xbox controllers that accompany the purchase of an Xbox One console, and the separately sold Elite Controllers Series 1 and Series 2 (collectively, the "controllers" or "joysticks")—are defective and render gameplay virtually impossible. The defect causes the joysticks to register phantom input or stick drift (the "Defect"), thwarting accurate gameplay. Accurate gameplay—i.e., properly registering user input on a controller—is the central purpose of video game controllers.

A.   **The Defective Xbox Controllers**

Poor controller design and selection of materials in the controllers are the cause of the Defect. Amended Complaint ("AC"), ¶¶ 86 – 96.[1] Specifically, the potentiometers[2] contain a design flaw. A potentiometer is connected to each joystick shaft, as well as the controller's circuit board, and it works as an electrical current, interacting with the joystick to convert the physical position of the joystick into an electrical signal to control gameplay. *Id.* The potentiometer contains housing and a brush, with

---

[1] "¶" refers to paragraphs in the AC.
[2] The potentiometer is a very common electrical component that is used to control the flow of electrical current. ¶¶ 86 – 96.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 1

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

the brush designed to sweep across several points of contact in an arc-like motion. *Id.* However, in an effort to reduce friction and wear of the controllers' components sliding against each other, a small amount of grease is placed inside the joystick. ¶ 93. This grease breaks down and loses viscosity over time, where heat or friction will accelerate this effect. *Id.* The base oil then separates and adheres to the carbon film where the brush sweeps. *Id.* The grease changes the contact resistance between the wiper and the resistive surface. ¶ 94. The result is a current value that differs from what the circuitry expects, and thus a misinterpretation of the joystick's input. *Id.* Once this occurs, the joystick registers phantom input or joystick drift, thwarting accurate gameplay. *Id.* All Xbox One controllers contain this same design flaw, and are all likely to fail under foreseeable and reasonable use. ¶ 95.

Microsoft is aware of the Defect through droves of complaints from consumers about this issue, both directly from consumers and through online forums and social media sites that it monitors. ¶¶ 97 – 101. Microsoft also controls the manufacture, development, marketing, sales, and support for the Xbox controllers. ¶ 102. Microsoft performed pre-release testing on the Xbox controllers which should have alerted it to the Defect. *Id.* Numerous complaints posted in Microsoft forums reveal that Microsoft has been aware of the stick drift Defect for many years. ¶¶ 103 – 105. Notably, many of the responses to the stick drift complaints on these Microsoft boards advise buying a new controller as the only solution. ¶¶ 106 – 112.

**B. Plaintiffs' Experiences with the Defective Xbox Controllers**

Unsurprisingly, many minors have purchased defective Xbox controllers. Five of the eight Plaintiffs are minors: Plaintiffs J.A., through his guardian Tara Allen ("J.A.") (Illinois); C.C., through his guardian, Cindy Crummit ("C.C.") (Maryland); A.D., through his guardian Luckiesia Belton ("A.D.") (California); A.H., through his guardian Tracy Hunt ("A.H.") (North Carolina); and J.H., through his guardian Tracy Hunt ("J.H.") (North Carolina). Three of the eight Plaintiffs are adults: Donald McFadden ("McFadden") (New York); Brandon Petti ("Petti") (California); and Samuel Whisnant ("Whisnant") (North Carolina). Each Plaintiff purchased Xbox controllers, and all have experienced the Defect. ¶¶ 10 – 72. None of the Plaintiffs knew of the Defect prior to purchasing the

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 2

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  defective Xbox controllers. *Id.* Had the Plaintiffs known of that the Xbox controllers were defective,

2  they would not have purchased them, or would have paid substantially less for them than they did. *Id.*

3    **C.  The Minor Plaintiffs Have Disaffirmed the Arbitration Provision**

4      Each of the five minor Plaintiffs has expressly disaffirmed the End User Licensing Agreement

5  ("EULA") that Defendant purports is related to use of the defective Xbox One controllers, and each

6  has completely ceased use of their defective Xbox One controllers. ¶¶ 19, 26, 33, 40, 52.

7    **D.  Plaintiffs Seek Public Injunctive Relief**

8      Plaintiffs seek an injunction on behalf of themselves, the putative class, and the general public,

9  prohibiting Microsoft from making material omissions and misrepresentations to the public as to the

10  nature of its Xbox controllers. ¶ 128. Plaintiffs seek a public injunction requiring Microsoft to notify

11  all Xbox controller owners, and the public at large, about the Defect, setting forth a description of the

12  Defect in Xbox controllers and that the Xbox controllers do not perform as marketed. *Id.* Along with

13  Plaintiffs' prayer for monetary relief, the injunctive relief sought is essential to stopping Microsoft's

14  deceptive scheme. In the absence of an injunction, Microsoft will remain free to continue to mislead

15  members of the public regarding the Defect, causing consumers to believe Microsoft's material mis-

16  representations and omissions concerning the function and reliability of the controllers. ¶ 129.

17      Microsoft lures consumers into purchasing the Xbox controllers by touting the Xbox control-

18  lers as superior controllers that enhance gameplay, describing the Elite controllers as the "world's

19  most advanced controller" and emphasizing the Xbox one joysticks and buttons as possessing "Ulti-

20  mate Precision." ¶ 130. But Microsoft does not disclose to consumers that the Xbox controllers are

21  defective, causing the joystick component to fail. Members of the general public have the right to

22  know the latent defects with the Xbox controller components. *Id.*

23      The injunctive relief sought will protect the public from Microsoft's deceitful marketing prac-

24  tices which misrepresent and omit material facts. Plaintiffs seek to enjoin Microsoft from misrepre-

25  senting the features of its Xbox One controllers and Elite controllers to the public. ¶ 131.

26

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 3

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

III.   **ARGUMENT**

A.   **Microsoft Has Not Carried Its Burden of Establishing an Agreement to Arbitrate**

The Federal Arbitration Act ("FAA") reflects the fundamental principle that arbitration is a matter of contract. 9 U.S.C. §§ 1–16; *see also Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (internal quotation marks omitted). Under sections 2 and 4 of the FAA, the court "determine[s] (1) whether a valid arbitration agreement exists and (2) whether the agreement encompasses the dispute at issue." *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 719 (9th Cir. 2020) (internal citations and quotations omitted).[3] Here, there is no valid agreement to arbitrate that encompasses the claims in dispute.

B.   **The Law of the Forum State Applies**

To enforce an agreement to arbitrate, the district court must first decide what law governs formation and enforceability of the alleged agreement. *See, e.g., Carideo v. Dell, Inc.*, 520 F. Supp. 2d 1241, 1242 (W.D. Wash. 2007) (citing *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (using Washington choice-of-law rules to determine which state's "generally applicable common law contract defenses" would apply when "determining whether the arbitration provision is valid"). Under Washington law, when parties dispute choice of law, there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before the court will engage in a conflict-of-laws analysis. *Erwin v. Cotter Health Ctrs.*, 167 P.3d 1112, 1119–20 (Wash. 2007). "Absent an actual conflict, Washington law presumptively applies." *Tilden-Coil Constructors, Inc. v. Landmark Am.*

---

[3] Defendant's argument that the arbitrator decides Plaintiffs' challenges to the arbitration agreement is dealt with below, *infra* Section III.G.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 4

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*Ins. Co.*, 721 F. Supp. 2d 1007, 1012-13 (W.D. Wash. 2010) (citing *Erwin*, 167 P.3d at 1120).

Here, Washington law presumptively applies, and Microsoft has not presented argument otherwise. Additionally, because Microsoft's principal place of business is in Washington and is the state's "largest corporate citizen," Washington has a paramount interest and most significant relationship to this conflict, further supporting the application of Washington law to this Court's analysis. *See Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 553 (W.D. Wash. 2008).

**C.  No Agreement to Arbitrate Exists Between the Parties**

**1.  The Click-Through Agreement Does Not Apply to Disputes for the Controllers**

Microsoft spends a significant portion of its motion to compel discussing the Xbox Live Service Agreement that the Plaintiffs were forced to "accept" in order to receive continued online support for their consoles. Def. Br., 3-6. Defendant overlooks that this agreement, under its own terms, does not include disputes related to Xbox hardware. Holbrook Decl. Exs. 54, 80, 111, 130, 133. Under the "Covered Services" section of the Service Agreement, Microsoft provides that "[t]he following products, apps and services are covered by the Microsoft Services Agreement . . . Xbox Game Pass, Xbox Game Studios games, apps and websites, Xbox Live Gold, Xbox Live, Xbox Music, Xbox Store . . . ." *Id.* Xbox hardware accessories, like controllers, are not mentioned in the agreement. *Id.* Because this dispute involves a defect in the controllers (*see Section* II.A, *supra*) rather than claims relating to the live services covered under the click-through agreement, that agreement does not apply in any event. *See Revitch*, 977 F.3d at 723-24 (O'Scannlain, J., concurring) ("Federal courts are required to compel arbitration for those controversies that actually stem from the contract containing the arbitration clause. But when the dispute is wholly unrelated … federal courts have no power to compel arbitration."). The only possibly relevant agreement—to the extent an agreement even exists (one does not, *see Section* II.C.2, *supra*)—is therefore the one contained within the Xbox controller's packaging.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 5

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

### 2. The Shrink-Wrap Agreement in the Xbox Controller Packaging is Unenforceable

A shrink-wrap agreement is an in-the-box contract. Under Washington law, shrink-wrap agreements can be enforceable, *see Mortenson Co. v. Timberline Software*, 998 P.2d 305 (Wash. 2000), but there must be sufficient notice of the terms. *See Kwan v. Clearwire Corp.*, No. C09-1392JLR, 2011 U.S. Dist. LEXIS 150145, at *24 (W.D. Wash. Dec. 28, 2011). Here, Microsoft failed to provide Plaintiffs with sufficient notice of the terms, and thus its shrink-wrap agreements are unenforceable.

Defendant unpersuasively attempts to distinguish the Ninth Circuit's leading case on "shrink-wrap" agreements, *Norcia v. Samsung Telecomm'ns America, LLC*, 945 F.3d 1279 (9th Cir. 2017), which held that "even if a customer may be bound by an in-the-box contract under certain circumstances, such a contract is ineffective where the customer does not receive adequate notice of its existence." *Id.* at 1289. In *Norcia*, the plaintiff purchased a Samsung phone. *Id.* at 1282. In the product box was a Product Safety & Warranty Information brochure that contained an arbitration provision. *Id.* The court found that the plaintiff was not bound by the arbitration provision because "[s]uch a brochure indicates that it contains safety information and the seller's warranty . . . . A reasonable person in Norcia's position would not be on notice that the brochure contained a freestanding obligation outside the scope of the warranty." *Id.* (internal citation omitted).

Here, as in *Norcia*, Microsoft fails to show consent. *See id.* at 1286. There is no discernable difference between the warranty pamphlet included within the product packaging in *Norcia* and the limited information contained within and on the Xbox controller packaging. The warranty pamphlet in this case was titled "Xbox One Accessory Product Manual," a title which gives no indication that it contains any information limiting the consumer's rights.[4] O'Connell Decl. Exs. A-E. Directly under

---

[4] Between 2016 and 2019, the Product Manual appears to have a cover sheet, with the title "Regulatory and Warranty Guide," making it even more unlikely a consumer would view the pamphlet as a contract as it mentions neither an agreement or terms the consumer must agree to and may not have opened

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 6

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

the title, bolded and capitalized, is the phrase "Important Product Safety and Warranty Information"— a phrase that gives no indication that the consumer should read on to discover the pamphlet is supposed to be a contract. *Id.* While later on that page Microsoft does direct the consumer to accept certain terms located at three different URLs, that presupposes the consumer reads on to find the "inconspicuous" provision in a document where the "contractual notice [was] not obvious." *Norcia*, 945 F.3d at 1286. The summary of the arbitration agreement itself was buried on the fourth or fifth page of the manual, near the end of the document, and not mentioned as a crucial part of the "agreement" referenced on the first page. *See* O'Connell Decl. ¶ 4. In fact, the product guide in this case did not even include the full agreement; Plaintiffs would have to complete the extra step of accessing the URL listed in the manual (presuming all Plaintiffs had internet access) to see the full extent of the legal rights they were expected to give up, including a broad arbitration provision. *Id.*; O'Connell Decl. Exs. A-E. This provision cannot be considered an agreement related to the "warranty." Def. Br. at 13; *Kwan.*, 2011 U.S. Dist. LEXIS 150145, at *26 ("central issue" of whether a consumer is bound by a shrinkwrap agreement turns on "whether the consumer has notice of and access to the terms and conditions of the contract prior to the conduct which allegedly indicates his or her assent."). Microsoft also argues that an agreement was formed because the boxes for these products directed consumers to accept certain terms located at various URLs. Defendant's brief describes this text as "prominent," but, in actuality, the text appears small and often on the side, back, or bottom of the

the booklet. O'Connell Decl., Exhibit C. In October 2019, Microsoft appears to have altered the cover page to read "Product and Regulatory Guide, Limited Warranty and Agreement" and also changed the title block on the first page to include this language. *Id.*, Exhibit D. Thus, before 2019, Microsoft did not include the word "agreement" or any other terminology suggesting the consumer is supposedly binding themselves through the included pamphlet—most likely, they altered the pamphlet in 2019 for this reason (which Plaintiffs submit is still inadequate). At minimum, then, it is clear that for any purchase before October 2019, there is no colorable argument that the Product Manual gave sufficient notice of the existence of an arbitration agreement. Even after October 2019, the language is insufficiently conspicuous to put a reasonable consumer on notice.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 7

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

box, buried between other information. *See* O'Connell Decl., Exs. F-U (providing images of the various boxes in use during the purchasing period). The text merely states the warranty[5] is located at a URL—no mention of an agreement, terms, or anything indicating the consumer is entering into a bilateral contract as opposed to be given information where they can find the rights flowing to them from the seller. *See* O'Connell Decl., Exs. R, S and T.[6]

Moreover, the arbitration clause contained within the warranty purports to limit *all claims* regarding the product—far more than just warranty claims. The consumer is nowhere given appropriate notice that the "warranty" requires they give up substantial rights far beyond the warranty provisions, and they cannot be said to agree to these terms. *See Norcia*, 845 F.3d at 1290 (stating that a reasonable consumer would not understand that "receiving the seller's warranty and failing to opt out of an arbitration provision contained within the warranty constituted assent to a provision requiring arbitration of all claims against the seller, including claims not involving the warranty.").

Under *Revitch, Norcia* and Washington law*,* Microsoft has not met its burden of proving that there is an agreement to arbitrate. Its motion to compel arbitration should, accordingly, be denied.

### D. The Arbitration Agreement is Unconscionable

Under Washington law, a finding of *either* procedural or substantive unconscionability is "sufficient to void the agreement." *Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486, 494 (Wash. 2020). Here, the agreement is both procedurally and substantively unconscionable.

#### 1. The alleged arbitration agreements are procedurally unconscionable

---

[5] Some of the boxes vaguely mention a "warranty & agreement" but do not reference arbitration. A reasonable consumer would also likely read that language as an agreement just about the warranty and not have any indication that Microsoft would attempt to be limiting consumers' rights beyond the warranty (by later seeking to arbitrate disputes unrelated to the warranty). Notably, some of the boxes, including those likely purchased by at least some of the Plaintiffs, did not include any fine print language about an "agreement" that consumers "have to accept."

[6] Even if the Court determines that, in theory, text on the outside of a box can constitute notice the consumer is entering into a bilateral contact, it should find here that the text was insufficient to convey such notice because the consumer is simply alerted to the existence of a "Limited Warranty" at a url, not notice of a binding arbitration agreement that purports to arbitrate claims outside of the warranty.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 8

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

The arbitration agreement is procedurally unconscionable and cannot be enforced.[7] Under Washington law, a finding of *either* procedural or substantive unconscionability is "sufficient to void the agreement." *Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486, 494 (Wash. 2020). To determine whether a party lacked meaningful choice and an agreement is procedurally unconscionable, Washington courts examine the circumstances surrounding the transaction, including: (1) the manner in which the contract was entered, (2) whether plaintiffs had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print. *Burnett*, 470 P.3d at 495. Whether the agreement is a contract of adhesion is also a relevant consideration, though not dispositive. *See Zuver v. Airtouch Commc'ns*, 103 P.3d 753, 760 (Wash. 2004).

Here, the alleged contracts are unconscionable. First, both of the contracts cited by Defendant—the click-through software agreement for the use of Xbox Live services (which, as noted above, does not apply to this hardware dispute) and the shrink-wrap agreement bundled in the warranty for the controllers—are contracts of adhesion. Defendant is a large, multinational corporation with vastly greater bargaining power than Plaintiffs, many of whom are minors. In its motion to compel, Defendant admits that Plaintiffs had no bargaining power, and could only interact with the contract on a take-it-or-leave-it basis, often after they purchased the product—if they did not agree to every term within the warranty, they would be forced to return their consoles and accessories before use. Def. Br. at 20.

Second, Washington Courts have also placed great emphasis on the element of surprise when considering procedural unconscionability. As mentioned above, any mention of the arbitration clause appears buried within the product manual included with the controllers and not mentioned on the face of the document, Plaintiffs made no affirmative showing that they were aware of the arbitration

---

[7] As elaborated below, *infra* Section III.G, unconscionability here is a gateway arbitrability issue for the court, not an arbitrator, to decide because the purported delegation clause is itself unconscionable.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 9

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

clause, and Plaintiffs could not access the clause in the product manual until after they completed their purchases and unboxed their controllers. That the arbitration clause in the warranty agreement also attempts to require consumers to arbitrate claims beyond the warranty also constitutes unfair surprise. *See Norcia*, 845 F.3d at 1290. Washington courts have found these elements sufficient to find procedurally unconscionability. *See, e.g., Mattingly v. Palmer Ridge Homes, LLC*, 157 Wash. App. 376, 392, 238 P.3d 505, 512 (2010); *Burnett,* 470 P.3d at 494. The difficulty in finding the full terms of an arbitration clause when it is hidden behind a link is further evidence of insufficient notice as to the existence or extent of the arbitration clause. *Burnett,* 470 P.3d at 494 ("[b]ecause essential terms were hidden and Burnett had no reasonable opportunity to understand the arbitration policy . . . even if an arbitration agreement was indeed established, it was procedurally unconscionable and unenforceable").

The arbitration agreements were procedurally unconscionable because, as detailed above, they are contracts of adhesion; Plaintiffs were not placed on notice of the contents of the in-the-box agreement, which was buried within a pamphlet contained in packaging that could be opened only after purchase; the full terms of the warranty for the controllers were not contained within the packaging but linked in a URL; and the packaging or face of the pamphlet did not place Plaintiffs on sufficient notice that by using the product, Plaintiffs would be giving up substantial legal rights.

**2.  The alleged arbitration agreements are substantively unconscionable**

Washington Courts have ruled that contracts that significantly reduce a cause of action's statute of limitations are substantively unconscionable. *See, e.g., Adler v. Fred Lind Manor*, 103 P.3d 773, 787 (Wash. 2004) (holding that a contract that imposed a private statute of limitations of 180 days when the statutory period was three years substantively unconscionable); *Gandee v. LDL Freedom Enters., Inc.*, 293 P.3d 1197, 1201 (Wash. 2013) (finding a similar provision substantively unconscionable when the period was shortened from four years to thirty days); *Hill v. Garda CL Nw., Inc.*, 308 P.3d 635, 638 (Wash. 2013) (same regarding a reduction from three years to fourteen days).

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 10

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

The arbitration clauses at issue here impose a similar limitation on claims. Both the Microsoft Service Agreement and the controller warranty agreement provide that the parties "must file in small claims court or arbitration any claim or dispute … within one year from when it first could be filed. Otherwise, it is permanently barred." O'Connell Decl. Exs. X, Y, Z; Holbrook Decl. Exs. A (at 22), B (at 47), C (at 74), D (at 104), E (at 126). The statute of limitations for Washington consumer protection claims is four years. Rev. Code Wash. (ARCW) § 19.86.120.[8] As in *Adler*, this drastic reduction of the time period in which a consumer can bring a potential claim is substantially unconscionable and therefore unenforceable. *Adler,* 103 P.3d at 787; *see also Lohr v. Nissan N. Am., Inc.*, No. C16-1023RSM, 2017 U.S. Dist. LEXIS 38934, at *22 (W.D. Wash. Mar. 17, 2017) (finding durational limitations on warranty unconscionable at motion to dismiss stage on similar allegations as present here).

### E. The Arbitration Provision is Invalid as to Plaintiffs' California Claims Because it Prohibits a Consumer from Seeking Public Injunctive Relief in Any Forum

Tellingly absent from Microsoft's brief is any reference to Plaintiffs' allegations that the arbitration clause does not apply to Plaintiffs' claims for public injunctive relief. That is likely because Microsoft is aware that the California Supreme Court's ruling in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017) forecloses any argument that Plaintiffs' California claims for public injunctive relief could be compelled to arbitration.

Following the California Supreme Court's ruling in *McGill*, courts in the Ninth Circuit routinely hold that arbitration provisions—such as the agreement in this case—are void as against public policy under California law where they purport to waive a plaintiff's right to seek public injunctive relief in any forum. As recently confirmed by the Ninth Circuit, public injunctive relief "is relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the

---

[8] In this case, Microsoft's concealment of the defect impacts any statute of limitations analysis. *See* ¶ 127. This makes it even more egregious for Defendant to try to substantially limit the period in which plaintiffs can bring their claims.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 11

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

general public." *Snarr v. HRB Tax Grp., Inc.*, No. 19-17441, 2020 U.S. App. LEXIS 38373, at *1-5 (9th Cir. Dec. 9, 2020) (citing *McGill*, 393 P.3d at 90).

In *McGill*, the California Supreme Court was asked to determine the validity of a provision in an arbitration agreement waiving the right of individuals to seek, in any forum, the public injunctive relief under the Unfair Competition Law ("UCL"), Consumer Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL"). The plaintiff had filed a class action lawsuit against her credit card issuer, Citibank. *Id.* at 88. The credit card agreement at issue provided, however, that all claims relating to the parties' relationship were subject to arbitration, "including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision." *Id.* Further, it required that any claims "must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis" and the arbitrator would "not award relief for or against anyone who is not a party." *Id.* Because the plaintiff had not opted out of the arbitration provision in her credit card agreement, Citibank moved for individual arbitration. *Id.* Plaintiff responded that the arbitration agreement was unenforceable under established California law. *Id.*

In reviewing the enforceability of the arbitration clause, the *McGill* court recognized that the CLRA, UCL, and FAL expressly grant consumers the right to seek an injunction (in any forum) to protect themselves and other similarly situated from unfair business practices. *Id.* at 89. It further observed that the California Civil Code provides that "a law established for a public reason cannot be contravened by a private agreement." *Id.* at 93 (citing Cal. Civ. Code § 3513). Applying these laws, the *McGill* Court reasoned that pre-dispute waivers of the public injunctive relief available under these statutes "would seriously compromise the public purposes the statues were intended to serve." *Id.* at 94. It concluded that these waivers are thus "invalid and unenforceable under California law." *Id.*

In reaching its conclusion, the court also rejected Citibank's argument that the FAA preempted

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 12

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

the state court from enforcing such a waiver, finding that "the FAA does not require enforcement of a provision in a pre-dispute arbitration agreement that, in violation of generally applicable California contract law, waives the right to seek *in any forum* public injunctive relief under the UCL, the CLRA, or the false advertising law." *Id.* at 95 (emphasis original).

Courts across the country have since applied *McGill* to invalidate public injunctive relief waivers in consumer arbitration agreements. Recently, the Ninth Circuit reiterated *McGill*'s holding in *Snarr*, upholding the district court's denial of a motion to compel arbitration where the agreement required arbitration of almost all claims and stated that any relief in arbitration "must be individualized to you and will not affect any other client" in addition to waiving all representative claims in any forum. *Snarr*, 2020 U.S. App. LEXIS 38373, at *2. The plaintiff in *Snarr* brought claims under the CLRA, UCL and FAL, and sought generally to enjoin future violations of those statutes, in addition to describing specific terms for injunctive relief to remedy the defendant's allegedly misleading web services and advertising. *Id.* at *3. Because the plaintiff sought public injunctive relief which would enjoin deceptive practices directed at the public, the arbitration clause was invalidated as applied to those claims. *Id.* The Ninth Circuit rejected the defendant's argument that the public injunctive remedy should be severed from the other remedies, as foreclosed by binding precedent in *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019), an action involving very similar severability language which "held that the entire claim under the statute must be severed from arbitration, rather than just the public injunctive remedy." *Id.* at *4 (citing *Blair*, 928 F.3d at 981).

The holding in *Snarr* echoes the Ninth Circuit's affirmance of *McGill* in *Blair*, as well as two other recent Ninth Circuit decisions dealing with the enforceability of an arbitration clause in actions, like this one, that sought public injunctive relief. *See Blair*, 928 F.3d at 819; *Tillage v. Comcast Corp.*, 772 F. App'x 569 (9th Cir. 2019); *McArdle v. AT&T Mobility LLC*, 772 F. App'x 575 (9th Cir. 2019). In

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 13

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*Blair*, the Ninth Circuit was asked to decide whether the FAA preempts California's *McGill* rule. The court held that it does not. *Blair*, 928 F.3d at 830–31 ("[T]he FAA does not preempt the *McGill* rule."). The relevant portions of the arbitration agreement at issue stated that "any dispute or claim" between Rent-A-Center and plaintiffs was to be "resolved by binding arbitration," which was to "be conducted on an individual basis" and would not affect "accountholders other than [plaintiffs]." *Blair*, 928 F.3d at 823. The Ninth Circuit held that the agreement was invalid because it violated the *McGill* rule insofar as it constituted a waiver of Blair's right to seek public injunctive relief in any forum. *Id.* at 831.

The Ninth Circuit relied on its opinion in *Blair* in upholding the *McGill* rule in *McArdle*, as well. *See McArdle*, 772 F. App'x at 575. And in *Tillage*, the Ninth Circuit likewise upheld a district court's order denying Comcast's motion to compel arbitration based on its opinion in *Blair*. There, the Ninth Circuit found the arbitration agreement between Comcast and plaintiffs null and void in its entirety because the agreement itself provided that its class action waiver was "an essential part of this arbitration provision and cannot be severed from it." *Tillage*, 772 F. App'x 569. The Ninth Circuit further rejected Comcast's argument that the opt-out clause of its subscriber agreement removed it from *McGill*'s coverage; specifically, Comcast argued that because its subscriber agreement purportedly waived a person's right to pursue a public injunction only if he or she agreed to arbitrate, it was a valid waiver. *Id.* That argument failed, because "*McGill* applies to any consensual waiver of public injunctive relief, irrespective of how the parties choose to waive that relief." *Id.* Recent cases applying California law continue to follow in these footsteps.[9]

---

[9] *See, e.g.*, *McGovern v. U.S. Bank, N.A.*, No. 18-CV-1794-CAB-LL, 2020 U.S. Dist. LEXIS 142618, at *4 (S.D. Cal. Aug. 10, 2020) ("The public injunction waiver language in the arbitration provision . . . is encompassed by *McGill*, meaning that the provision is invalid and unenforceable."); *Delisle v. Speedy Cash*, 818 F. App'x 608, 610 (9th Cir. 2020) (same); *Eiess v. USAA Fed. Sav. Bank*, No. 19-CV-00108-EMC, 2019 U.S. Dist. LEXIS 144026, at *6–*7 (N.D. Cal. Aug. 23, 2019) (same); *Lotsoff v. Wells Fargo Bank, N.A.*, No. 18-cv-2033, 2019 U.S. Dist. LEXIS 169373, at *13–*14 (S.D. Cal. Sept. 30, 2019) (finding the arbitration agreement unenforceable under *McGill* where it stated that "neither Wells

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 14

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

### 1. Plaintiffs A.D. and Petti seek public injunctive relief for the California Subclass

As set forth in *McGill*, "public injunctive relief under the UCL [and] the CLRA . . . is relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." 393 P.3d at 90 (quotations omitted); *see also Blair*, 928 F.3d at 824 ("[P]ublic injunctions benefit 'the public directly by the elimination of deceptive practices,' but do not otherwise benefit the plaintiff, who 'has already been injured, allegedly, by such practices and [is] aware of them.'" (quoting *McGill*, 393 at 90)). "There is no principled distinction to be drawn between the relief requested here and that requested in *McGill* and related California cases involving public injunctive relief." *Snarr*, 2020 U.S. App. LEXIS 38373, at *3.

Plaintiffs are consumers who were deceived by Microsoft. They assert claims under the CLRA and the UCL on behalf of themselves, a class of others similarly situated, and the general public. In addition to seeking monetary damages and declaratory relief for Plaintiffs and those in the class, the Amended Complaint seeks injunctive relief that would, among other things, protect others in the future by: (i) prohibiting Microsoft from making material omissions and misrepresentations to the public as to the nature of its Xbox controllers; (ii) requiring Microsoft to notify Xbox controller owners, and the public at large, about the Defect, setting forth a description of the Defect in Xbox controllers and that the Xbox controllers do not perform as marketed. ¶ 128. The injunctive relief is essential to stopping Microsoft's continuing deceptive scheme and protecting the public from its deceitful marketing which misrepresent and omit material facts regarding the Defect. ¶¶ 129-31.

---

Fargo nor you will be entitled to join or consolidate disputes by or against others as a representative or member of a class, to act in any arbitration in the interests of the general public"); *Dornaus v. Best Buy Co., Inc.,* No. 18-cv-04085, 2019 U.S. Dist. LEXIS 24522, at *8 (N.D. Cal. Feb. 14, 2019) (finding that contracts that prevent all adjudication of public injunctive relief—in any forum—are impermissible under California law, including "contracts that compel all claims to arbitration"); *Vasquez v. Libre by Nexus, Inc.,* No. 17-cv-00755-CW, 2018 U.S. Dist. LEXIS 214143, at *14–*15 (N.D. Cal. Aug. 20, 2018) (holding arbitration agreement invalid because it purported to waive the plaintiff's right to request public injunctive relief).

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 15

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Plaintiff A.D. and Plaintiff Petti's CLRA and UCL claims include remedies for an injunction primarily for the benefit of the general public, not just for Plaintiffs' or class members' individual benefit. *McGill*, 393 P.3d at 87; ¶¶ 185–214. Accordingly, the claims at issue here seek public injunctive relief and fall under the scope of *McGill*. *See, e.g., Snarr*, 2020 U.S. App. LEXIS 38373, at *3 (concluding that relief that "would affect allegedly deceptive practices that aim to lure members of the public to use and pay for [the defendant's] services, and the relief [would] benefit [plaintiff] only incidentally" constituted public injunctive relief).[10]

### 2. The Arbitration Agreement and Class Action Waiver are Invalid as to California Consumers Because they Preclude California Consumers From Pursuing Public Injunctive Relief in any Forum

Microsoft seeks to compel arbitration based on its adhesion contracts that mandate both individual arbitration *and* individualized relief, and thereby prevent anyone from seeking public injunctive relief in any forum whatsoever. The most recent iteration of the waiver reads, in relevant part:

**Binding Arbitration and Class Action Waiver**

15. **Binding Arbitration and Class Action Waiver If You Live In (or, If a Business, Your Principal Place of Business Is In) the United States.** We hope we never have a dispute, but if we do, you and we agree to try for 60 days to resolve it informally. If we can't, you and we agree to **binding individual arbitration before the American Arbitration Association ("AAA") under the Federal Arbitration Act ("FAA"), and not to sue in court in front of a judge or jury**. Instead, a neutral arbitrator will decide and the arbitrator's decision will be final except for a limited right of review under the FAA. **Class action lawsuits, class-wide arbitrations, private attorney-general actions, and any other proceeding where someone acts in a representative capacity aren't allowed. Nor is combining individual proceedings without the consent of all parties**. "We," "our," and "us" includes Microsoft,

---

[10]  *See also Cottrell v. AT&T Inc.*, No. 19-cv-7672, 2020 U.S. Dist. LEXIS 93423, at *22-23 (N.D. Cal. May 27, 2020)(finding the requested injunction was public where it sought to enjoin not only "unauthorized charges for existing customers" but also "deceptive practices in inducing members of the public to enroll in free trials of AT&T services that later led to automatic billing"); *Eiess*, 2019 U.S. Dist. LEXIS 144026, at *6–7 (finding plaintiff sought public injunctive relief where the relief sought "transcends [plaintiff's] personal situation and relief" in that she "asked the court to enjoin USAA from future violations of California consumer protection statutes by forcing USAA to amend its Deposit Agreement (which is available to the public to review) to better reflect its actual practices of charging multiple [non-sufficient funds] fees");

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 16

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Skype (*see* section 10) and Microsoft's affiliates.[11]

In contravention of *McGill*'s prohibition against the waiver of the right to seek public injunctive relief in any forum, Section 15 of the Service Agreement purports to waive the right to seek such public injunctive relief by requiring that consumers agree to "binding individual arbitration" and further emphases in bold that "**Class action lawsuits, class-wide arbitrations, private attorney-general actions, and *any other proceeding where someone acts in a representative capacity aren't allowed*. Nor is combining individual proceedings without the consent of all parties**." *Id.* (emphasis added). Section 15(d) further provides that "[t]he arbitrator may award declaratory or injunctive relief only to you individually to satisfy your individual claim." This language bars the arbitrator from granting the type of broadly-applicable injunctive relief that would benefit the public at large, and which the CLRA and UCL otherwise authorize. This provision is materially indistinguishable from the provisions at issue in *Snarr*, *McGill*, *Blair*, *Vasquez*, and *Dornaus*. *See Snarr*, 2020 U.S. App. LEXIS 38373, at *2 (agreement required arbitration of all claims and states that any relief in arbitration "must be individualized to you and will not affect any other client" in addition to waiving all representative claims or private attorney general actions in any forum); *McGill*, 393 P.3d at 87–88 (arbitration agreement purported to bar arbitrator from awarding relief for any non-party or on a non-individual basis); *Blair*, 928 F.3d at 823 ("any dispute or claim" between Rent-A-Center and plaintiffs was to be "resolved by binding arbitration" which was to "be conducted on an individual basis" and would not affect "accountholders other than [plaintiffs]"); *Vasquez*, 2018 U.S. Dist. LEXIS 214143, at *14–*15 (arbitration clause required individual arbitration of all claims, so long as a party requested it, and further stated that any right to arbitrate a class action was "expressly waived"); *Dornaus*, 2019 U.S. Dist. LEXIS 24522, at *8 (contract that compelled all claims to arbitration, yet allowed pursuit only

---

[11] https://www.microsoft.com/en-us/servicesagreement/ ("MSA") (last accessed Dec. 18, 2020) (emphasis in original). The prior versions of the MSA contain substantially similar language.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 17

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

of individual relief in the forum, was void).

Moreover, the broad sweep of the agreement—which does not provide for injunctive relief (or any relief) on a representative basis and which Microsoft relies on to seek to compel *all* of Plaintiffs' claims to arbitration and terminate this action—means that Plaintiffs cannot litigate claims for public injunctive relief in court, either. That is, because the agreement does not provide a separate carve-out allowing a plaintiff to seek public injunctive relief on a representative basis, Microsoft's arbitration clause, through its purported class waiver, purportedly bars Plaintiffs from seeking public injunctive relief in any forum. This is not, in other words, an arbitration provision that requires a plaintiff to arbitrate individual claims while permitting him to seek public injunctive relief in court. A contract that compels all claims to arbitration yet allows only the pursuit of individual relief (solely on behalf of the plaintiff) in that forum thus prevents adjudication of public injunctive relief and is invalid under *McGill. See Dornaus*, 2019 U.S. Dist. LEXIS 24522, at *8 (finding that contracts that prevent all adjudication of public injunctive relief—in any forum—are impermissible under California law, which "includes contracts that compel all claims to arbitration, yet allow only pursuit of individual relief (solely on behalf of oneself) in that forum"). Microsoft cannot escape *McGill*'s preclusive effect on the plain language of the arbitration agreement. Further, the severability clause provides that "if a finding of partial illegality or unenforceability would allow class-wide or representative arbitration, section 15 will be unenforceable in its entirety." MSA, at 15(i). Here, *McGill* forbids the arbitration agreement from thwarting Plaintiffs' access to public injunctive relief in a representative capacity, and thus, because that provision is unenforceable, section 15 is thus "unenforceable in its entirety."[12]

---

[12] The arbitration clause here is far more restrictive than that at issue in *Diaz v. Nintendo of America, Inc.*, No. 19-1116 (W.D. Wash. Mar. 2, 2020). While Plaintiffs maintain that the arbitration provision in *Diaz* was similarly void under *McGill*, Judge Tilly found that Nintendo's End User License Agreement did not bar an individual from seeking—or an arbitrator from awarding—public injunctive relief, because the agreement explicitly gave the arbitrator the power "to grant whatever relief would be

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 18

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

**F.** **Minors Who Disaffirm the Contract Cannot be Compelled to Arbitration**

Regardless of the applicability of the arbitration clause to the Class as a whole, it cannot, under black letter contract law, be enforced against the minor Plaintiffs who have disaffirmed it. The contract laws of nearly every state afford minors the opportunity to disaffirm contracts after they have entered them. These disaffirmance laws reflect a policy of "shield[ing] minors from their lack of judgment and experience and confer[ing] upon them the right to avoid their contracts in order that they may be protected against their own improvidence and the designs and machinations of other people." *Sparks v. Sparks*, 101 Cal.App.2d 129, 137, 225 P.2d 238 (1950).

Each of the four states in which minor Plaintiffs reside recognize a minor's right to disaffirm contracts. *See, e.g., Doe v. Epic Games, Inc.*, No. 19-cv-03629-YGR, 2020 U.S. Dist. LEXIS 11473, at *13 (N.D. Cal. Jan. 23, 2020) (applying California law and finding a minor may disaffirm an arbitration provision); *Sheller v. Frank's Nursery & Crafts*, 957 F. Supp. 150, 153 (N.D. Ill. 1997) (quoting *Iverson v. Scholl Inc.*, 483 N.E.2d 893, 897 (Ill. Ct. App. 1985)) (Illinois law generally provides that "'the contract of a minor is voidable and may be repudiated by the minor during minority or within a reasonable time upon achieving majority absent a ratification.'"); *Kelly v. United States*, 809 F. Supp. 2d 429, 434 (E.D.N.C. 2011) ("Under North Carolina law, the contract of a minor generally is not binding on him.") (citations omitted); *Schmidt v. Prince George's Hospital*, 366 Md. 535, 553, 784 A.2d 1112, 1122 (Ct. App. Md. 2001) (minors may disaffirm contracts under Maryland law).

Courts routinely hold that a minor's ability to disaffirm a contract applies to arbitration clauses. *See, e.g., Doe*, 2020 U.S. Dist. LEXIS 11473, at *13 ; *R.A. v. Epic Games, Inc.*, Case No. 2:19-cv-014488, 2019 U.S. Dist. LEXIS 217426 (C.D. Cal. July 30, 2019) (in a similar case against the maker of *Fortnite*,

---

available in a court under law or in equity." *Id.* at ECF No. 36. No such language or authority is present in Microsoft's agreement. Here, by contrast, the MSA explicitly *forbids* an arbitrator from awarding declaratory or injunctive relief to anyone other than the individual "to satisfy [the] individual claim." *See* MSA, at Section 15(d). Accordingly, such reliance by Microsoft on the *Diaz* decision is misplaced.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 19

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

the Central District also denied a motion to compel arbitration based on "[Plaintiff's] state[ment]: 'I do not consent to arbitrate any of the claims in this action and disaffirm the 2017 and 2019 EULA.'"); *T. K. v. Adobe Sys. Inc.*, No. 17-CV-04595-LHK, 2018 U.S. Dist. LEXIS 65557, 2018 WL 1812200, at *6 (N.D. Cal. Apr. 17, 2018) ("T.K. has disaffirmed the entire renewal agreement. . . . the Court sees no basis to enforce the arbitration or no-class-action terms of a contract that is now a 'nullity.'"); *see also A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1062 (7th Cir. 2018) (in a TCPA action, the court denied motion to compel arbitration against a minor because: "Under applicable state law, minors lack capacity to enter into contracts and can disaffirm their obligations under contracts formed before they reach the age of eighteen. Moreover, A.D. certainly engaged in an act of disaffirmation by filing this lawsuit and asserting her status as a minor.").

Here, the minor Plaintiffs are under the age of majority, and each disaffirmed the contract with Microsoft. *See* ¶¶ 19, 26, 40, 52. Whatever the method, "[d]isaffirmance by a minor rescinds the entire contract, rendering it a nullity." *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F.Supp.2d 989, 1000 (N.D. Cal. 2012) (citing *Scollan v. Gov't Emps. Ins. Co.*, 222 Cal.App.2d 181, 183-84, 35 Cal. Rptr. 40 (1963)). With the contract a nullity, the arbitration clause is unenforceable against the minor Plaintiffs.

### G. Plaintiffs' Challenge to the Arbitration Provision is Properly Before this Court

Microsoft devotes nearly two pages to argue that the parties agreed to delegate issues of arbitrability to an arbitrator. Def. Br. at 19–20. But that puts the cart before the horse. This Court must first decide the threshold issues of whether Plaintiffs' claims are subject to a valid arbitration agreement and, if so, whether the claims arise out of the agreement. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *see also Eiess,* 404 F. Supp. 3d at, 1248 ("[t]he issue of contract formation, however, is not a gateway delegability question); *Revitch,* 977 F.3d at 723-

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 20

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

24 (O'Scannlain, J., concurring) ("Federal courts are required to compel arbitration for those controversies that actually stem from the contract containing the arbitration clause. But when the dispute is wholly unrelated … *federal courts have no power to compel arbitration.*") (emphasis added).

First, all Plaintiffs contend that their claims are *not* subject to a valid arbitration agreement (*see* Section III.C, *supra,* disputing formation) and it is this Court, *not the arbitrator,* that must decide that question. Moreover, the Minor Plaintiffs have disaffirmed, so no agreement exists between them and Microsoft; to the extent Microsoft disagrees, this too, is a dispute over formation that must be decided by the court. (*see* Section III.F, *supra*, regarding Minors' disaffirmance); *Lopez v. Kmart Corp*., No. 15-cv-01089-JSC, 2015 U.S. Dist. LEXIS 58328, at *20 (N.D. Cal. May 4, 2015) (finding that the plaintiff "has exercised his statutory right of disaffirmance, thereby rescinding the contract and rendering it a nullity; as a result, there is no valid agreement to arbitrate.") (internal citations omitted).

Second, even if there were a valid agreement, the Court would also have to decide whether the agreement covers the claims at-issue. The Ninth Circuit just months ago ruled that "whether the agreement encompasses the dispute at issue" is for the court to decide. *See Revitch,* 977 F.3d at 719 (internal citation and quotation omitted). And as the concurrence elaborated, the statutory language of the FAA makes "valid, irrevocable, and enforceable" *only* those controversies in an arbitration contract "arising out of such contract." *See id.* at 721-24 (O'Scannlain, J., concurring) (quoting 9 U.S.C. § 2). Although a delegation clause was apparently not at issue in *Revitch*, the analysis is the same: the statutory authority empowering the court to compel arbitration limits that authority to disputes arising out of the contract at-issue, so there is no authority to defer adjudication of that question to the arbitrator. *See New Prime Inc. v. Oliveira,* 139 S. Ct. 532, 537 (2019) ("[A]uthority under the [Federal] Arbitration Act to compel arbitration may be considerable, it isn't unconditional.").[13] Here, the

---

[13] Here, the MSA and warranty themselves state that the "Federal Arbitration Act governs all

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 21

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

primary agreement that Microsoft relies on (the MSA) does not cover hardware or the controllers so this case – which is about hardware defects with the controllers – is wholly unrelated to the agreement and cannot be compelled to arbitration. *See supra* Section III.C.1 (discussing how the agreement does not encompass the claims); *Revitch*, 977 F.3d at 724 ("A party can hardly be said to consent to arbitrate disputes that have nothing at all to do with the subject of the contract.").[14] If the arbitration agreement in the warranty is found to be enforceable, only Plaintiffs' warranty claims arise from the warranty and are the only ones that could possibly be subject to arbitration. *See supra* Section III.C.2.

Third, the delegation clause itself is also unconscionable and unenforceable, which is a gateway issue that the Court must resolve. As stated above, a contract of adhesion is procedurally unconscionable and unenforceable if it is presented in a manner that deprives the weaker party of meaningful choice. *See supra* Section III.D.1. Microsoft presented the delegation clause through incorporation by reference of the AAA rules.  Microsoft deprived consumers of a reasonable opportunity to understand that they were agreeing to have an arbitrator decide any challenge they might have to the arbitration clause on unconscionability grounds. The Washington Supreme Court recently held that when an agreement to arbitrate was formed via incorporation by reference of an arbitration clause into employment contract, then it was procedurally unconscionable and unenforceable. *Burnett*, 470 P.3d at

---

provisions relating to arbitration," which necessarily means Section 2 and the limitations it imposes on federal courts to compel disputes to arbitration. *See, e.g.,* MSA, ¶ 11.

[14] Microsoft's reliance on *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) to argue that incorporation of the AAA rules delegates arbitrability questions to the arbitrator is misplaced. The Ninth Circuit expressly limited that holding to contracts between sophisticated parties. *Id.* at 1131. The court left open the question of whether incorporation of AAA rules is a clear and unmistakable delegation of arbitrability questions to the arbitrator in the context of consumer contracts. *Id.* at 1130. While district courts have split on the question since *Brennan*, many have held that *Brennan* does not apply to contracts between corporations and their customers. *See, e.g., Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1253 (N.D. Cal. 2019) (joining "the majority of district courts in the Ninth Circuit" and finding incorporation by reference of AAA rules was not clear and unmistakable delegation in a consumer contract); *see also Galilea,  LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1061 (9th Cir. 2018) (presumption against arbitrability of arbitrability). This Court should find the same.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 22

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

494–96. Microsoft's presentation of a delegation clause through incorporation by reference to the AAA rules is likewise procedurally unconscionable.

Fourth, even if the Court were to find that a valid, enforceable contract and delegation clause exists between the parties (which it should not), the MSA and warranty require that the Court determine the enforceability of the class action waiver. Microsoft—the drafter of the MSA and warranty—explicitly included carve-out language establishing that "a court has *exclusive* authority to enforce the prohibition on arbitration on a class-wide basis or in a representative capacity." MSA, § 15(d) (emphasis added); O'Connell Dec., Exs. Y and Z (warranties). Assuming the agreements are valid, this language would be considered reflective of the parties' intention to have the court decide whether, for the California Plaintiffs, the class action waiver runs afoul of the *McGill* rule prohibiting private contracts from waiving consumers' statutory right to obtain public injunctive relief. *See supra* Section III.E (citing *McGill*, 393 P.3d at 94);  *see also, Revitch*, 977 F.3d at 716 n.1 (holding that where services agreement provided "issues relating to the . . . enforceability of the arbitration provision are for the court to decide," "it is unquestionably the responsibility of the court—not the arbitrator—to resolve" the issue); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1212 (9th Cir. 2016) (holding that due to carve-out language requiring court to consider enforceability of a waiver, "it remains for [the court] to consider on the merits whether the . . . waiver . . . is enforceable . . . .").

Plaintiffs' challenges to the arbitration agreement are properly decided by this Court.

## H. Should the Court Compel Arbitration of Certain Claims, the Remaining Claims Should Proceed in Federal Court

Defendant argues that if any of the Plaintiffs' claims are compelled to arbitration, then *all* claims for *all* Plaintiffs should be stayed. Defendant's argument is unreasonable because any arbitrator's decision is not binding on the court, resolution of some claims do not depend on the resolution of others, and a stay would needlessly cause delay and prejudice to Plaintiffs.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 23

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

"As the arbitration is not binding on the Court, the arbitrator's decision will not necessarily impact the outcome of the non-arbitrable claims." *Chen v. Bank of Am., N.A.*, No. CV 19-6941-MWF (SK), 2020 U.S. Dist. LEXIS 142913, at *7 (C.D. Cal. Mar. 31, 2020); *see also Congdon v. Uber Techs.,* 226 F. Supp. 3d 983, 991 (N.D. Cal. 2016) (finding same). Regardless of what happens in arbitration, claims that proceed in court will still need to be litigated "irrespective of the arbitration outcome," so there is nothing to be gained from delay. *Chen*, 2020 U.S. Dist. LEXIS 142913, at *7. In addition, here, in which Plaintiffs from several states bring claims under different state laws, the resolution of any non-arbitrable claims would not depend on the resolution of arbitrable ones. *See United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415 (9th Cir. 2002) (finding that a stay to encompass all of the nonarbitrable claims in a case is only appropriate when the arbitrable claims predominate, or when the outcome of the nonarbitrable claims will depend upon the arbitrator's decision). That distinguishes this case from Defendant's sole authority, *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F. Supp. 3d 1285 (N.D. Cal. 2018). There, plaintiffs in two out of three states had arbitrable claims and the "Plaintiffs [did] not dispute that the Court should stay all proceedings if it orders arbitration as to any Plaintiff." Also, Defendant's broad class action waiver prohibits "combining individual proceedings" so, on its own terms, the fate of this action cannot be tied with any arbitrations.

Defendant has not met its burden of showing that a stay would be appropriate. *See Uniloc 2017 LLC v. HTC Am., Inc.*, No. C18-1732 RSM, 2020 U.S. Dist. LEXIS 238814, at *3 (W.D. Wash. Dec. 18, 2020) (moving party has the burden). A stay would cause undue delay and prejudice Plaintiffs because their claims that remain would be independent of the outcome of arbitrations.

## IV.    CONCLUSION

For the reasons set forth herein, Microsoft's motion should be denied.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 24

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Respectfully submitted,

*/s/ Cynthia J. Heidelberg*
Cynthia J. Heidelberg
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Telephone: (206) 652-8660
cheidelberg@bjtlegal.com

Nicholas A. Migliaccio *(pro hac vice)*
Jason S. Rathod *(pro hac vice)*
MIGLIACCIO & RATHOD LLP
412 H Street NE, Suite 302
Washington, DC 20002
Telephone:  (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

Benjamin F. Johns *(pro hac vice)*
Andrew W. Ferich *(pro hac vice)*
Alex M. Kashurba *(pro hac vice)*
CHIMICLES SCHWARTZ KRINER
  & DONALDSON-SMITH LLP
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
bfj@chimicles.com
awf@chimicles.com
amk@chimicles.com

*Counsel for Plaintiffs*

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS - 25

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

2

## **CERTIFICATE OF SERVICE**

3
4
5
6

     I hereby certify that on January 8, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties registered on the CM/ECF system.  All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

7

8

                         */s/ Cynthia J. Heidelberg*

9

                         Cynthia J. Heidelberg

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO COMPEL ARBITRATION AND STAY
CLAIMS

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660