The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

J. A., through his guardian, TARA ALLEN, et al., individually and on behalf of all others similarly situated,

                Plaintiffs,

    v.

MICROSOFT CORPORATION,

                Defendant.

No. 20-cv-00640-RSM-MAT

MICROSOFT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

***Note on Motion Calendar:***
January 29, 2021

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**Page**

A.   The Law of Plaintiffs' Home States Generally Governs Their Claims. ............................1

B.   Plaintiffs Agreed to Arbitrate Disputes with Microsoft..........................................2

    1.   Plaintiffs Concede They Agreed to Arbitrate under the MSA.................................2

    2.   Plaintiffs Also Agreed to Arbitrate in the Warranty Agreements............................2

C.   The Parties Delegated Arbitrability Issues to the Arbitrator, Including the Validity and Enforceability of the Agreement. ......................................................................4

    1.   The Arbitrator Decides Unconscionability; in Any Event, the Agreements to Arbitrate Are Not Unconscionable. ......................................................6

    2.   Disaffirmance Presents an Issue for the Arbitrator..................................9

D.   The Two California Plaintiffs' Requests for Public Injunctive Relief Do Not Undermine their Agreements to Arbitrate. ..........................................................10

E.   The Court Should Stay Litigation of Any Claims Not Sent to Arbitration. .....................12

Conclusion ................................................................................................12

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4    *AT&T Mobility LLC v. Concepcion*,

5        563 U.S. 333 (2011).................................................................................................5

6    *Bischoff v. DirecTV, Inc.*,
         180 F. Supp. 2d 1097 (C.D. Cal. 2002) ................................................................12

7
8    *Blair v. Rent-A-Ctr., Inc.*,
         928 F.3d 819 (9th Cir. 2019) ......................................................................10, 11, 12

9    *Brennan v. Opus Bank*,
10       796 F.3d 1125 (9th Cir. 2015) ...........................................................1, 4, 5, 6

11   *Diaz v. Nintendo of Am. Inc.*,
         2020 WL 996859 (W.D. Wash. 2020)......................................................................4
12
13   *Dornaus v. Best Buy Co., Inc.*,
         2019 WL 632957 (N.D. Cal. 2019) ....................................................1, 11, 12

14   *Ferguson v. Corinthian Colleges, Inc.*,
15       733 F.3d 928 (9th Cir. 2013) .................................................................................11

16   *G.G. v. Valve Corp.*,
         2017 WL 1210220 (W.D. Wash. 2017)..................................................................10
17
18   *G.G. v. Valve Corp.*,
         799 F. App'x 557 (9th Cir. 2020) ............................................................................5

19   *Gilbert Ents., Inc. v. Amazon.com*,
20       2019 WL 6481697 (C.D. Cal. 2019)......................................................................11

21   *Han v. Mobil Oil Corp.*,
         73 F.3d 872 (9th Cir. 1995) .....................................................................................8
22
23   *Henry Schein, Inc. v. Archer & White Sales, Inc.*,
         139 S. Ct. 524 (2019)...............................................................................................4

24   *Ingram v. Neutron Holdings, Inc.*,
         467 F. Supp. 3d 575 (M.D. Tenn. 2020)................................................................10
25
26   *Kilgore v. KeyBank, N.A.*,
         718 F.3d 1052 (9th Cir. 2013) .................................................................................8

27

*Kuznik v. Hooters of Am., LLC,*
  2020 WL 5983879 (C.D. Ill. 2020).........................................................................10

*Kwan v. Clearwire Corp.,*
  2012 WL 32380 (W.D. Wash. 2012).........................................................................4

*Lohr v. Nissan N. Am., Inc.,*
  2017 WL 1037555 (W.D. Wash. 2017).......................................................................9

*Mansfield v. Vanderbilt Mortg. & Fin., Inc.,*
  29 F. Supp. 3d 645 (E.D.N.C. 2014)........................................................................6

*Moffett v. Recording Radio Film Connection, Inc.,*
  2020 WL 6143595 (C.D. Cal. 2020)....................................................................4, 11

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983).................................................................................................2, 12

*Norcia v. Samsung,*
  845 F.3d 1279 (9th Cir. 2017) ..........................................................................3, 4, 8

*Order of United Comm. Travelers of Am. v. Wolfe,*
  331 U.S. 586 (1947)...............................................................................................8

*Owen v. CBRE, Inc.,*
  2016 WL 7033973 (D. Md. 2016) ............................................................................6

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
  388 U.S. 395 (1967)...........................................................................................5, 10

*Rent-A-Center, West, Inc. v. Jackson,*
  561 U.S. 63 (2010)...................................................................................................5

*Revitch v. DIRECTV, LLC,*
  977 F.3d 713 (9th Cir. 2020) ...................................................................................4

*Roberts v. AT&T Mobility LLC,*
  2018 WL 1317346 (N.D. Cal. 2018) .......................................................................10

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.,*
  298 F. Supp. 3d 1285 (N.D. Cal. 2018) ...........................................................3, 4, 8, 12

*Sanchez v. CleanNet USA, Inc.,*
  78 F. Supp. 3d 747 (N.D. Ill. 2015) .........................................................................9

*Schmidt v. Samsung Electronics of America, Inc.,*
  2017 WL 2289035 (W.D. Wash. 2017)............................................................ *passim*

*Sidik v. Royal Sov. Int'l Inc.*,
  348 F. Supp. 3d 206 (E.D.N.Y. 2018) ........................................................8

*Snarr v. HRB Tax Gp., Inc.*,
  2020 WL 7249334 (9th Cir. 2020) ..........................................................12

*Soltani v. W. & S. Life Ins. Co.*,
  258 F.3d 1038 (9th Cir. 2001) ............................................................6, 8

*Tarulli v. Circuit City Stores, Inc.*,
  333 F. Supp. 2d 151 (S.D.N.Y. 2004)........................................................6

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
  925 F.2d 1136 (9th Cir. 1991) ..............................................................10

*Veliz v. Cintas Corp.*,
  2004 WL 2452851 (N.D. Cal. 2004) ..........................................................9

*Weimin Chen v. Sierra Trading Post, Inc.*,
  2019 WL 3564659 (W.D. Wash. 2019)......................................................5, 6

*Wolf v. Langemeier*,
  2010 WL 3341823 (E.D. Cal. 2010)..........................................................12

**State Cases**

*Adler v. Fred Lind Manor*,
  153 Wn.2d 331 (2004) ......................................................................8, 9

*Burnett v. Pagliacci Pizza, Inc.*,
  196 Wn.2d 38 (2020) ..........................................................................7

*Dotson v. Amgen, Inc.*,
  104 Cal. Rptr. 3d 341 (Cal. App. 2010)......................................................9

*Erwin v. Cotter Health Centers*,
  161 Wn.2d 676 (2007) ........................................................................1

*Gandee v. LDL Freedom Enter., Inc.*,
  176 Wn.2d 598 (2013) ........................................................................8

*Mattingly v. Palmer Ridge Homes LLC*,
  157 Wn. App. 376 (2010) ......................................................................7

*McGill v. Citibank, N.A.*,
  393 P.3d 85 (Cal. 2017) ................................................................10, 11

*Zuver v. Airtouch Commc'ns, Inc.*,
  153 Wn.2d 293 (2004) ........................................................................7

1    The avid Xbox gamers who bring this lawsuit repeatedly agreed with Microsoft to submit

2    their disputes to a consumer-friendly, individual arbitration process.  Plaintiffs do not contest

3    their assent to the Microsoft Services Agreement ("MSA").  And while they contend they are not

4    bound to the Warranty Agreements for their Xbox controllers, they do not even mention (much

5    less discuss) *Schmidt v. Samsung Electronics of America, Inc.*, 2017 WL 2289035 (W.D. Wash.

6    2017), which rejects their arguments on remarkably similar facts.  The only remaining issue is

7    whether Plaintiffs' claims are arbitrable under their agreements.  But the agreements delegate

8    arbitrability issues to the arbitrator, and that delegation is enforceable under controlling law.  *See*

9    *Brennan v. Opus Bank*, 796 F.3d 1125, 1134 (9th Cir. 2015).  The Court therefore should compel

10   Plaintiffs to arbitration, where they can litigate their arguments as to scope, unconscionability,

11   and disaffirmance.  The fact that two Plaintiffs purport to seek public injunctive relief under

12   California law does not alter this outcome; it simply requires the Court to retain jurisdiction in

13   case a determination as to public injunctive relief becomes necessary after arbitration.  *See*

14   *Dornaus v. Best Buy Co., Inc.*, 2019 WL 632957, at *6 (N.D. Cal. 2019).

15       **A.      The Law of Plaintiffs' Home States Generally Governs Their Claims.**

16       Plaintiffs do not live in Washington; their agreements with Microsoft call for disputes to

17   be governed by the law of the states in which they reside, O'Connell Decl. (Dkt. 38), Exs. Y-Z

18   § 10 & Ex. X § 8; Holbrook Decl. (Dkt. 37), Exs. B-F § 11, and they "bring claims under

19   different state laws," Opp. 24:7; *see also* Am. Compl. ¶ 117, Counts V-VIII (state law claims);

20   Opp. 11-18 (arguing California law).  Undeterred by inconsistency, they nevertheless ask the

21   Court to apply Washington law on this Motion.  Opp. 5:2-6.

22       As Microsoft explained (Mot. 12:9-14)—and Plaintiffs do not address—the state law

23   where each Plaintiff resides supplies the applicable contract principles, while federal law (i.e.,

24   the FAA) governs arbitration issues.  For many contract issues, the potentially relevant state laws

25   do not conflict.  For instance, all states at issue enforce clickwrap and in-the-box contracts.  But

26   where there is a conflict, "the law of the state chosen by the parties to govern their contractual

27   rights and duties will be applied."  *Erwin v. Cotter Health Centers*, 161 Wn.2d 676, 694 (2007).

1   Unlike Plaintiffs, Microsoft will apply these principles consistently throughout this Reply.

2        **B.**    **Plaintiffs Agreed to Arbitrate Disputes with Microsoft.**

3             **1.**    **Plaintiffs Concede They Agreed to Arbitrate under the MSA.**

4        Plaintiffs concede they all assented to the click-through MSA, including its provisions

5   requiring Plaintiffs and Microsoft to arbitrate their disputes on an individual basis before the

6   American Arbitration Association ("AAA").  Opp. 5:10-12.  Unable to deny their agreement,

7   Plaintiffs argue about arbitrability, asserting the MSA's arbitration agreement does not apply

8   "[b]ecause this dispute involves a defect in the controllers."  *Id*. 5:18-19.  But the MSA

9   specifically provides that "the arbitrator rules on his or her own jurisdiction, including the

10  arbitrability of any claim."  Holbrook Decl., Exs. D-F § 15(d); *see also* Mot. 20:5-21 (quoting

11  AAA Consumer Rule R-14; citing consumer cases applying Rule).  The Court should therefore

12  reject Plaintiffs' request that it decide arbitrability; instead, as discussed more fully below, the

13  arbitrator must decide whether the MSA's arbitration provision reaches this dispute.

14       In arbitration, Microsoft will likely have the better of the arbitrability argument.  "[A]ny

15  doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."

16  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983).  In the MSA,

17  Plaintiffs broadly agreed to arbitrate any "dispute," including "any claim or controversy between

18  you and us concerning the Services," except IP claims.  Holbrook Decl. ¶¶ 5-6 & Exs. B-F

19  § 15(a).  Because "the Services" include Xbox Live, the online service for Xbox play, *id*. & Opp.

20  5:15-16, any dispute "concerning" Xbox gameplay is arbitrable.  Here, Plaintiffs have Xbox Live

21  gamertags, Holbrook Decl. ¶ 8, and their claims center on the allegation that supposed controller

22  defects prevent "[a]ccurate gameplay," Am. Compl. ¶ 1; *see also id*. ¶¶ 11-14, 16-17, 21-23,

23  28-30, 35-37, 47-49, 46 & 51, 55, 58-61, 66-67; Opp. 1 (arguing alleged defects "render

24  gameplay virtually impossible").  An arbitrator could easily conclude this dispute concerns

25  gameplay.

26           **2.**    **Plaintiffs Also Agreed to Arbitrate in the Warranty Agreements.**

27       Although no Plaintiff has *any* connection to Washington, they ignore the laws of their

home states—all of which enforce in-the-box contracts like the Warranty Agreements, *see* Mot. 16:6-17:4—and invoke Washington law in an effort to avoid their Agreements, Opp. 6-8. But Washington law likewise requires enforcing Plaintiffs' promise to arbitrate.

Plaintiffs conveniently ignore the one case from this District applying Washington law to similar facts, i.e., *Schmidt v. Samsung Electronics of Am., Inc.*, 2017 WL 2289035 (W.D. Wash. 2017), even though Microsoft discussed *Schmidt* in its Motion. *See* Mot. 17-18. In *Schmidt*, as here, the boxes containing the products at issue displayed a notice that "additional [] terms and conditions applied." 2017 WL 2289035, at *3 (quotation marks omitted). In *Schmidt*, as here, "[e]ach box contained a brochure" with a generic title, which "[a]t the beginning … warned the reader that" use of the device constituted acceptance of the warranty terms. *Id.* In *Schmidt*, as here, each consumer "could have opened the box to find the agreement, read and disagreed with the terms, and then returned the device." *Id.* On these facts, Judge Coughenour held consumers "were provided at least the same notice of the agreement as the plaintiffs in *Mortensen* [*v. Timberline Software Corp.*, 140 Wn.2d 568, 585 (2000)]," the seminal case enforcing in-the-box contracts in Washington. *Id.* at *3. Based on this notice, Judge Coughenour concluded the consumers "assented to arbitration under Washington law." *Id.* To the extent the Court applies Washington law, it should follow *Schmidt* and reach the same result here.

Rather than address this on-point precedent under Washington law, Plaintiffs cite *Norcia v. Samsung*, 845 F.3d 1279 (9th Cir. 2017), which applied *California* law, for the proposition that an in-the-box brochure's title must apprise the consumer of the terms within. Opp. 6. But Microsoft discussed and distinguished *Norcia* (Mot. 17:5-18:17), explaining why *Schmidt* and *In re Samsung Galaxy*—both of which discuss *Norcia*—provide more appropriate guidance here. *See In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F. Supp. 3d 1285, 1294 (N.D. Cal. 2018) (enforcing arbitration agreements in brochures using prominent "classic contractual language," even where brochure title did not announce the terms it contained); *Schmidt*, 2017 WL 2289035, at *3 ("Plaintiffs had [] adequate notice that additional terms and conditions existed, and should have read further to inquire."). Plaintiffs fail even to cite, much

less discuss, either *Schmidt* or *In re Samsung Galaxy* (or Microsoft's argument) on this issue.

Finally, it makes no difference that the *full* terms of the arbitration agreement appeared only online, with a thorough summary in the controller product guide.  Opp. 8:2-5 & n.6.  In *In re Samsung Galaxy*, the court found adequate notice where the product guide—as in this case— told consumers "important legal information is available on the phone or on samsung.com."  298 F. Supp. 3d at 1295.  By contrast, this case has nothing in common with *Kwan v. Clearwire Corp.*, 2012 WL 32380, at \*9 (W.D. Wash. 2012), where a confirmation email said *nothing* about arbitration and "did not contain a direct link to" the contract, but linked only to defendant's homepage.  As a result, the customer in *Kwan* had to go to the homepage, which *also* did not refer to the contract, and then "negotiate her way through two more hyperlinks" to find terms. *Id.*  Here, the product guides in the controller boxes summarized arbitration terms, and the URL both on the boxes *and* in the guides led directly to the warranties page, not a generic homepage.

The robust notice here resembles the notice held to create valid agreements in *Schmidt* and *In re Samsung Galaxy*, not *Norcia*.  This Court should enforce the Warranty Agreements.

## C.     The Parties Delegated Arbitrability Issues to the Arbitrator, Including the Validity and Enforceability of the Agreement.

Because Plaintiffs agreed to arbitration, only arbitrability remains to be decided.  But "the question of who decides arbitrability is itself a question of contract," and "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527, 529 (2019).  "If an arbitration provision contains a delegation clause, the Court's inquiry ends."  *Diaz v. Nintendo of Am. Inc.*, 2020 WL 996859, at \*1 (W.D. Wash. 2020).  "[W]hile the Court determines the existence of an arbitration agreement, the arbitrator adjudicates its validity if the parties have delegated that authority."  *Moffett v. Recording Radio Film Connection, Inc.*, 2020 WL 6143595, at \*3 (C.D. Cal. 2020).  Absent challenges specific to the delegation provision, the arbitrator, and not the Court, decides arbitrability.[1]  *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir.

---

[1] Plaintiffs rely on *Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020), but they concede the case is beside the point because "a delegation clause was ... not at issue in *Revitch*."  Opp. 21:20.

2015); *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967).

Because the delegation clause largely disposes of Plaintiffs' arguments on this Motion, Plaintiffs half-heartedly challenge it as "unconscionable and unenforceable." Opp. 22. Their argument boils down to two complaints: first, that the delegation clause appears in "a contract of adhesion," and second, that delegation arises only from incorporation of the AAA Rules. *Id*.

The first argument attacks the agreement as a whole, not the delegation clause itself, as being presented on a take-it-or-leave it basis. Because Plaintiffs in this respect do "not make any arguments specific to the delegation provision," but rather challenge the adhesive nature of the agreement as a whole, the dispute goes to the arbitrator. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 74 (2010); *see also Brennan*, 796 F.3d at 1132 (discussing *Rent-A-Center*). In any event, the adhesive nature of a consumer contract does not make it unconscionable, for "the times in which consumer contracts were anything other than adhesive are long past." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346-47 (2011).

The second argument likewise ignores the case law and the contracts. Courts have long held incorporation of the AAA Rules in consumer contracts delegates arbitrability issues. *Schmidt*, 2017 WL 2289035, at *6; *Brennan*, 796 F.3d at 1130-31 (incorporation of AAA Rules "'clear and unmistakable' evidence that the parties intended to delegate … arbitrability" to arbitrator). Plaintiffs argue *Brennan* is limited "to contracts between sophisticated parties," Opp. 22 n.14, but that is not so. *Brennan* itself involved an employment agreement—a contract typically between parties of disparate bargaining power—and the Court noted the "vast majority of the circuits" have *not* limited similar holdings to contracts between sophisticated parties. *Brennan*, 796 F.3d at 1130-31. "[T]he greater weight of authority since *Brennan*, including within this District, concludes that *Brennan*'s holding also applies to disputes involving non-sophisticated parties." *Weimin Chen v. Sierra Trading Post, Inc.*, 2019 WL 3564659, at *4 (W.D. Wash. 2019). Microsoft's Motion cited four cases from this district applying *Brennan* to consumer cases, Mot. 20:16-21, and last year, the Ninth Circuit affirmed Judge Coughenour's decision that incorporating AAA Rules delegated arbitrability in a consumer case, *G.G. v. Valve*

*Corp.*, 799 F. App'x 557, 558 (9th Cir. 2020).  Plaintiffs address *none* of this.  Further, unlike the out-of-district cases Plaintiffs cite, the arbitration agreements here delegated arbitrability not only by incorporating the AAA Rules, but also by expressly stating "the arbitrator rules on his or her own jurisdiction, including the arbitrability of any claim."  Holbrook Decl., Exs. D-F § 15(d) (MSA 2018-2020); O'Connell Decl., Exs. Y, Z § 11(d) (Warranty Agreements 2018, 2019).

In light of this enforceable delegation, the FAA requires the arbitrator to decide arbitrability and enforceability issues, including scope, unconscionability, and disaffirmance.

### 1.  The Arbitrator Decides Unconscionability; in Any Event, the Agreements to Arbitrate Are Not Unconscionable.

The Ninth Circuit has squarely held that when an agreement incorporates the AAA Rules, the arbitrator (not the Court) must decide unconscionability challenges to the agreement as a whole or to the arbitration clause itself.  *Brennan*, 796 F.3d at 1134.  The only question for the Court is whether "the agreement to arbitrate arbitrability"—i.e., the delegation provision—"[is] itself unconscionable," *Weimin Chen*, 2019 WL 3564659, at *4 & n.4 (citing *Brennan*), an issue addressed above.  For that reason, Plaintiffs' further unconscionability arguments have no bearing on this Motion, and the Court should compel Plaintiffs to arbitrate arbitrability.

In any event, the arbitrator will find the agreements to be conscionable.  The arbitrator must apply the law chosen by the parties, i.e., Plaintiffs' home states' laws, because all but one of the states where Plaintiffs reside differ from Washington by requiring a showing of *both* procedural *and* substantive unconscionability to invalidate a contract.  *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1047 (9th Cir. 2001) (California); *Owen v. CBRE, Inc.*, 2016 WL 7033973, at *5 (D. Md. 2016) (Maryland); *Tarulli v. Circuit City Stores, Inc.*, 333 F. Supp. 2d 151, 156 (S.D.N.Y. 2004) (New York); *Mansfield v. Vanderbilt Mortg. & Fin., Inc.*, 29 F. Supp. 3d 645, 653 (E.D.N.C. 2014) (North Carolina).  Plaintiffs cannot show either form of unconscionability.

*Procedural Unconscionability.*  Plaintiffs argue the MSA and Warranty Agreements are unconscionable contracts of adhesion due to Microsoft's "greater bargaining power" and the "take-it-or-leave-it basis" of the agreements.  Opp. 9.  But as Plaintiffs acknowledge, *id.*, even under Washington law, "the fact that unequal bargaining power exists will not, standing alone,

justify a finding of procedural unconscionability."  *Zuver v. Airtouch Commc'ns, Inc.*, 153

Wn.2d 293, 305 (2004) (citations omitted).  Plaintiffs make no other argument that the

arbitration agreement in the MSA is procedurally unconscionable, and it is not:  Plaintiffs had

clear notice of that agreement when they clicked to accept the MSA, agreeing to its terms.

As to the Warranty Agreements, Plaintiffs make the same argument they advance to

contest contract formation, and it fails for the same reason.  *See* Opp. 9-10.  The Court rejected a

similar unconscionability argument in *Schmidt*, noting that the in-the-box brochures prominently

referred to arbitration.  2017 WL 2289035, at *5.  Here, both the product guides and the boxes

notified consumers that use of the product manifested assent to the Warranty Agreements and

provided a link to those terms—which a consumer could review before deciding to buy or use

the product.  Each linked Warranty Agreement began with a bolded note that by using the

product, the consumer agreed to the terms.  O'Connell Decl., Exs. X-Z.  The Warranty

Agreements also highlighted the agreements to arbitrate in bold font, as part of the introduction.

*See id.*, Ex. X ("**Section 9 contains a binding arbitration clause and class action waiver.  It**

**affects Your rights about how to resolve a dispute with Microsoft.  Please read it.**"); Exs.

Y-Z (heading "**CONSENT TO BINDING ARBITRATION AND CLASS ACTION**

**WAIVER**" followed by direction to Section 11 of the Warranty Agreement).  Further, the in-box

product guides prominently called out the arbitration terms in bold type on either the first or

fourth page, depending on the version.  *Id.*, Exs. A-C at 4; D at 1.

Even if Washington law did apply (and it does not), the facts here bear no likeness to

those in *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 57 (2020).  There, the "arbitration policy

appeared on page 18 of the 23-page handbook that [plaintiff] received *after* he signed the

employment agreement, and the arbitration policy was not identified in the handbook's table of

contents."  Nor does this case resemble *Mattingly v. Palmer Ridge Homes LLC*, 157 Wn. App.

376, 392 (2010), where terms were "buried in [a] booklet" provided *after* plaintiffs occupied the

home to which the warranty applied.  Here, Plaintiffs had notice of the Warranty Agreement

*before* they bought, opened, or used their controllers—they tacitly concede their controller boxes

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION
(No. 20-cv-00640-RSM-MAT) - 7

gave notice of the need to agree to the Warranty Agreements—and they could have returned the

controllers if they did not agree to those Agreements, as the product guide advised them.[2]

*Substantive Unconscionability.*  Plaintiffs claim substantive unconscionability as to only

a single contract term:  the requirement that they bring any claim "within one year from when it

first could be filed."  Opp. 10-11.  But the limitations period for Plaintiffs' claims has nothing to

do with the propriety of arbitration.  "[T]he enforceability of the [one-year limitation] is a matter

distinct from the enforceability of the arbitration clause in general.  Plaintiffs are free to argue

during arbitration that the [one-year limitation] is not enforceable."  *Kilgore v. KeyBank, N.A.,*

718 F.3d 1052, 1059 n.9 (9th Cir. 2013) (discussing enforceability of confidentiality clause).

In any event, the one-year limitations period does not shock the conscience.  Courts have

long held "a provision in a contract may validly limit … the time for bringing an action on such

contract to a period less than that prescribed in the general statute of limitations," as long as the

shorter period is "reasonable."  *Order of United Comm. Travelers of Am. v. Wolfe*, 331 U.S. 586,

608 (1947).  Courts in Plaintiffs' home states regularly enforce one-year contractual limitations

periods.  *See, e.g., Soltani*, 258 F.3d at 1043 (collecting California cases supporting six-month

contractual limitations period); *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995)

(12-month contractual limitations period "is a reasonable limitation which generally manifests no

undue advantage and no unfairness"); *Sidik v. Royal Sov. Int'l Inc.*, 348 F. Supp. 3d 206, 213

(E.D.N.Y. 2018) (New York law "enforce[s] a shortened statute of limitations period when the

… [agreed] period is reasonable.").  Plaintiffs' cases do not compel a different result even under

Washington law, as they do not reject one-year contractual limitations provisions.  *See Gandee v.*

*LDL Freedom Enter., Inc.*, 176 Wn.2d 598, 607 (2013) (contract provision shortening CPA's

limitations period "from four years … to 30 days"); *Adler v. Fred Lind Manor*, 153 Wn.2d 331,

---

[2] Plaintiffs assert the inclusion of an agreement to arbitrate "all claims" within a warranty
agreement is unconscionable, relying on *Norcia*.  Opp. 10.  But *Norcia* reasoned only that the
product brochure at issue there did not give a consumer notice of the obligations contained
within.  *Norcia*, 845 F.3d at 1289.  Here, the Warranty Agreements and the notices in the product
guide and on the boxes made clear that the Agreements affected the consumer's rights, using
classic contractual language that courts interpreting *Norcia* have blessed as providing adequate
notice.  *In re Samsung Galaxy*, 298 F. Supp. 3d at 1294; *Schmidt*, 2017 WL 2289035, at *3.

1  355 (2004) (shortening three-year limitations period to 180 days).  And *Lohr v. Nissan N. Am.,*

2  *Inc.*, 2017 WL 1037555, at *6 (W.D. Wash. 2017), addressed the interaction between the

3  duration of Nissan's limited warranty and plaintiffs' "allege[d] breach of express warranty

4  claims"—not a contractual limitations period.

5          But even if the arbitrator were to find the one-year limitations period unenforceable (it is

6  not), the MSA and the Warranty Agreements provide for its severance, "with the remainder of

7  [the arbitration agreement] remaining in full force and effect."  O'Connell Decl., Exs. X § 9(j);

8  *see id.* Y-Z § 11(g) (Warranty Agreements); Holbrook Decl. Exs. B-F § 15(i) (MSA).

9  Washington law, which Plaintiffs advocate, generally supports severing provisions found

10  unconscionable to give effect to parties' agreements to arbitrate, *Adler*, 153 Wn.2d at 359-60

11  (severing 180-day limitations period from arbitration agreement), as do the laws of Plaintiffs'

12  home states.[3]  Thus, even if the arbitrator were to find the one-year contractual limitations period

13  unconscionable, the solution would be to decline to enforce it, not void the arbitration agreement.

14          **2.    Disaffirmance Presents an Issue for the Arbitrator.**

15          The minor Plaintiffs argue they disaffirmed the "End User License Agreement" relating

16  to their controllers, *see* Am. Compl. ¶¶ 19, 26, 33, 40, 52, and that this allows them to avoid

17  arbitration, Opp. 19-20.  But the minor Plaintiffs do *not* disaffirm the MSA—because they want

18  to keep using Xbox Live—so their argument has no bearing on their obligation to arbitrate under

19  the MSA.  And the efficacy of their purported disaffirmance of the Warranty Agreements goes to

20  the arbitrator, as disaffirmance bears on the enforceability of the agreement as a whole.  *See* Mot.

21  21:6-22:23 (discussing cases); *id*. 23:17-19 (quoting AAA Consumer Rule R-14 (arbitrator

22  "shall" decide arbitrability of any claim and "validity" of a contract with arbitration agreement)).

23          Once again, Plaintiffs do not even mention—much less refute—the cases Microsoft cites

24  in its Motion (22:24-23:19) explaining that the "validity of [minor's] rescission of the contract as

25

26  ───────────────
   [3] *Dotson v. Amgen, Inc.*, 104 Cal. Rptr. 3d 341, 350 (Cal. App. 2010) (California); *Sanchez v.
   CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 757 (N.D. Ill. 2015) (Illinois); *Veliz v. Cintas Corp.*,

27  2004 WL 2452851, at *40 (N.D. Cal. 2004), *modified on other grounds*, 2005 WL 1048699
   (N.D. Cal. 2005) (Maryland, New York, North Carolina).

a whole, based on the doctrine of infancy, is a question reserved for the arbitrator … because the plaintiffs use the defense to challenge the validity of the User Agreement as a whole and not the Arbitration Provision specifically." *Ingram v. Neutron Holdings, Inc.*, 467 F. Supp. 3d 575, 585 (M.D. Tenn. 2020); *see also Kuznik v. Hooters of Am., LLC*, 2020 WL 5983879, at *4 (C.D. Ill. 2020) (court must "leave Plaintiff's challenge to the validity of the Arbitration Agreement for the arbitrator," including disaffirmance). These cases are consistent with the reasoning in *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140 (9th Cir. 1991), that "*Prima Paint* applies to 'voidable' contracts," including "'where one party was an infant.'" The cases Plaintiffs cite (Opp. 19-20), on the other hand, do not address this issue at all.

The minor Plaintiffs' purported disaffirmance of the Warranty Agreements presents an issue for the arbitrator. For example, the arbitrator might find that "Plaintiffs have only disaffirmed the [Warranty Agreements] in name, but not in practice, because they continue to receive benefits ... by their continued use of Defendant's products." *G.G. v. Valve Corp.*, 2017 WL 1210220, at *3 (W.D. Wash. 2017) (Coughenour, J.), *aff'd in relevant part*, 799 F. App'x 557 (9th Cir. 2020) (compelling arbitration despite minors' alleged disaffirmance).

**D.      The Two California Plaintiffs' Requests for Public Injunctive Relief Do Not Undermine their Agreements to Arbitrate.**

Plaintiffs A.D. and Petti purport to seek so-called "public injunctive relief" on behalf of California Xbox controller buyers, Am. Compl. ¶¶ 128-131, 214, but their agreements allow the arbitrator to award "injunctive relief only to [Plaintiffs] individually to satisfy [their] individual claim," Holbrook Decl., Ex. D-F § 15(d); O'Connell Decl., Exs. X § 9(f), Y-Z § 11(d). As a result, they argue the Court cannot compel them to arbitrate California statutory claims because *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017), holds "an agreement to waive the right to seek public injunctive relief … cannot be contravened by a private agreement." *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 824 (9th Cir. 2019). This argument has no impact on arbitration of the non-California Plaintiffs' claims. *Roberts v. AT&T Mobility LLC*, 2018 WL 1317346, at *9 (N.D. Cal. 2018), *aff'd*, 801 F. App'x 492 (9th Cir. 2020) (applying *McGill* but compelling arbitration of non-California plaintiffs). And even as to A.D. and Petti, it affects only arbitration procedure.

In the first place, because of the delegation clause, the *McGill* question goes to the arbitrator. "[W]here there is a clause delegating arbitrability questions to an arbitrator, it is for the arbitrator to decide if *McGill* makes the contract, or portions thereof, invalid." *Moffett*, 2020 WL 6143595, at *3 (collecting cases). "Although challenges to the arbitration agreement as a whole may subsequently return to this Court if an arbitrator rules that the Court must decide them, the Court is obligated to enforce the delegation clause absent specific challenges to it. … *Blair* and *McGill* … do not disturb [this] reasoning." *Gilbert Ents., Inc. v. Amazon.com*, 2019 WL 6481697, at *4 n.2 (C.D. Cal. 2019). And, as discussed above, Plaintiffs do not challenge the enforceability of delegation specifically.

A.D. and Petti are thus free to argue *McGill* in arbitration. If they persuade the arbitrator they have asserted public injunction claims that cannot be arbitrated (or if this Court concludes it should decide the issue), the process is simple. The arbitration agreements provide that if the part of the agreements precluding public injunctive relief "is found to be illegal or unenforceable, the remainder will remain in effect (with an arbitration award issued before any court proceeding begins)[.]" Holbrook Decl., Ex. E-F § 15(i); *see id.* Ex. D § 15(i); O'Connell Decl., Ex. Y-Z § 11(g); *id.* Ex. X § 9(j). Thus, the case should proceed as follows: (a) the parties arbitrate; (b) if *McGill* applies, pursuant to the agreements, "an arbitration award [will be] issued before any court proceeding"; and (c) if the arbitrator finds Microsoft liable on the California statutory claim, the case will return to the Court for a decision on public injunctive relief. Other courts have adopted precisely this approach. *See Dornaus v. Best Buy Co., Inc*., 2019 WL 632957, at *6 (N.D. Cal. 2019) ("While the remainder of plaintiff's action must be compelled to arbitration under the terms of the Agreement—including all questions of liability—the court shall retain jurisdiction over the adjudication of plaintiff's request for public injunctive relief, should defendant be found liable for the California statutory claims, … for which public injunctive relief may be available."); *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937 (9th Cir. 2013) ("Plaintiffs may return to the district court to seek their public injunctive relief" after arbitration).

Plaintiffs argue *Blair* precludes severing only the demand for public injunctive relief and

requires "that the entire claim under the [California] statute must be severed from arbitration." Opp. 13:19-21 (quoting *Snarr v. HRB Tax Gp., Inc.*, 2020 WL 7249334 (9th Cir. 2020) (citing *Blair*)). But *Blair* (and *Snarr*) turned on the language of a specific severability provision that allowed for severance only of a "claim for relief," so the court found the statutory *claim* (not just the public injunction *remedy*) had to be severed from arbitration. *Blair*, 928 F.3d at 824. But the *Blair* court invited parties "to split decisionmaking between a court and an arbitrator" in a different way, if they chose. *Id*. at 831 (citing *Ferguson*). They did so here: as in *Dornaus*, the arbitration agreements here provided for severance of any "part" found unenforceable (not any "particular claim") and further directed that arbitration occur "before any court proceeding." In short, the Court should compel arbitration of A.D. and Petti's claims but retain jurisdiction.

**E.     The Court Should Stay Litigation of Any Claims Not Sent to Arbitration.**

Microsoft believes the Court should compel all Plaintiffs to arbitration on all claims. But should the Court conclude only some Plaintiffs must arbitrate, it should exercise its discretion to find it "advisable to stay litigation among the non-arbitrating parties." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21 n.23. "A stay of all claims is particularly warranted in the class-action context because the complaint admits that common questions of fact and law predominate." *In re Samsung Galaxy*, 298 F. Supp. 3d at 1304. Indeed, courts routinely stay all claims by all plaintiffs in putative class actions, even if only some plaintiffs are compelled to arbitration. *See id.*; *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1115 (C.D. Cal. 2002) (staying plaintiffs not subject to arbitration, due to "the similarity of the issues" in the case and arbitration and "the potential for inconsistent findings"); *Wolf v. Langemeier*, 2010 WL 3341823, at *8 (E.D. Cal. 2010) (similar). The Court should do the same here.[4]

**CONCLUSION**

The Court should grant Microsoft's Motion to Compel Arbitration and Stay Claims.

---

[4] Plaintiffs assert the outcome in arbitration will not impact remaining claims, Opp. 24, but this conflicts with their position on arbitrability: if any Plaintiffs persuade an arbitrator that their arbitration agreements are invalid, disaffirmed, or do not cover their claims, those claims would return to this Court. For that reason, proceeding with litigation for some Plaintiffs while others arbitrate enforceability would risk inefficiently double-tracking claims that may be re-joined.

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION
(No. 20-cv-00640-RSM-MAT) - 12

1    DATED this 29th day of January, 2021.

2                                    Davis Wright Tremaine LLP
                                     Attorneys for Microsoft Corporation
3
                                     By */s/ Stephen M. Rummage*
4                                        Stephen M. Rummage, WSBA #11168
                                         MaryAnn T. Almeida, WSBA #49086
5                                        920 Fifth Avenue, Suite 3300
                                         Seattle, WA  98104-1610
6                                        Telephone: (206) 622-3150
                                         Fax: (206) 757-7700
7                                        E-mail: steverummage@dwt.com
                                         E-mail: maryannalmeida@dwt.com
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27